# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Roger Joseph Foster,             Civil No. 07-4317 (JRT/JJG)

      Petitioner,

v.                                                **REPORT AND RECOMMENDATION**

Joan Fabian,

      Respondent.

---

JEANNE J. GRAHAM, United States Magistrate Judge

This is a 28 U.S.C. § 2254 habeas action brought by Petitioner Roger Joseph Foster. The case returns to the Court's consideration pursuant to the filing of a supplemental memorandum by Respondent Joan Fabian on April 15, 2009 (Docket No. 41), as directed by the District Court (Docket No. 40). For the reasons set forth below, the Court recommends that the remaining claims in Foster's habeas petition be denied and that the case be dismissed with prejudice.

## I. BACKGROUND[1]

### A. The Underlying Criminal Offenses

In 1999, a jury in St. Louis County, Minnesota, found Foster guilty of a series of crimes that had occurred in the early morning hours of September 25, 1998. The crimes began with the burglary of the Eveleth Bottle Shop and ended when police apprehended Foster and two others after a high-speed chase across the Iron Range. In between, an Eveleth resident's Chevy Blazer was stolen; a federal vehicle was set ablaze; six handguns were stolen from a Virginia,

---

[1] The record in this case was filed in piecemeal fashion, and pages are not marked uniformly, if at all. The Court therefore refers to document names and page numbers only where necessary and possible.

Minnesota, pawn and gun shop; a convenience store clerk and a bread deliveryman were robbed at gunpoint; and a woman driving to work veered onto the sidewalk to avoid being hit during the high speed chase.

**B.     The Trial**

After the jury in Foster's case was impaneled and sworn, but before opening statements, Foster's attorney Todd Deal asked the trial court for permission to call four alibi witnesses whose names had not been disclosed to the prosecution: Robert Baumchen, Carissa Sleen, Sunny Thompson, and Justin Sislo. (Trial Tr. vol. II, at 44, May 25, 1999.) Deal explained he had personally learned the names and phone numbers of the witnesses that very morning. (*Id.* at 47.) Based on Minnesota Rule of Criminal Procedure 9.02, subd. 1(3)(a), which requires a defendant to inform the prosecution of an alibi defense before the omnibus hearing, the trial court denied Deal's request. The court remarked that Foster should have known the names of the witnesses long before the omnibus hearing if he had, in fact, been someplace other than where the prosecution claimed. (*Id.* at 47-48.)

During Foster's case-in-chief, Deal repeated his request to introduce the testimony of Baumchen and Sleen, who by that time had been located and interviewed. (Trial Tr., vol. IV, at 401, May 27, 1999.) According to Deal, those witnesses would testify that Foster was not at the scene of the arson, the bottle shop, or the pawnshop. (*Id.*) Although Deal argued vigorously for admission of the testimony, the court again precluded the testimony based on Rule 9.02. (*Id.* at 401-04, 408-10.)

The jury ultimately found Foster guilty of first- and third-degree burglary, theft of a motor vehicle, second-degree arson, two counts of first-degree aggravated robbery, four counts of second-degree assault, and possession of a firearm by a felon. On July 19, 1999, Foster was

sentenced to 249 months in prison. He received concurrent sentences on the theft, arson, burglary, and felon-in-possession convictions. The aggravated robbery and assault convictions were sentenced consecutively to the first-degree burglary charge and to each another.

### C. The State Court Post-Conviction Proceedings

#### 1. The Direct Appeal and 2002 Post-Conviction Petition

On October 13, 1999, Foster appealed his convictions to the Minnesota Court of Appeals. He later filed a petition for post-conviction relief in the trial court and asked that his direct appeal be remanded pending the outcome of his post-conviction petition. The Minnesota Court of Appeals granted this request, allowing Foster to have all issues decided on appeal from the post-conviction order.

In his petition for post-conviction relief, Foster alleged that his trial counsel was ineffective. Foster claimed he given Deal and Deal's investigator the names, addresses, and phone numbers of four alibi witnesses three weeks before trial. But according to Foster, Deal neither investigated the witnesses nor disclosed them to the prosecution. The trial court held an evidentiary hearing on Foster's claim, but ultimately found Deal's recollection of timing and events more credible than Foster's.

Foster also argued in his post-conviction memorandum that his sentence was improper because his conviction for burglary of the pawnshop was not a crime against a person for the purposes of permissive consecutive sentencing under Minnesota's Sentencing Guidelines. The court agreed and reduced Foster's sentence from 249 months to 201 months.

Foster then appealed his conviction and the resolution of his post-conviction petition. Among other claims, he argued that the evidence at trial was insufficient to sustain his convictions, and that his trial counsel had been ineffective. On June 8, 2004, the Minnesota

Court of Appeals affirmed the trial court in all respects. *Foster v. State*, No. A03-991, 2004 WL 1244151 (Minn. Ct. App. June 8, 2004). The Minnesota Supreme Court denied Foster's petition for review.

### 2. Foster's Motion for a Sentence Modification

On March 10, 2005, Foster filed a pro se motion under Minnesota Rule of Civil Procedure 27.03 to correct his sentence. He alleged that the consecutive sentences violated *Blakely v. Washington*, 542 U.S. 296 (2004), which had been decided after he was sentenced.

The trial court denied Foster's motion on April 21, 2005, and the Minnesota Court of Appeals affirmed on May 23, 2006. On August 23, 2006, the Minnesota Supreme Court denied Foster's petition for further review.

### 3. Foster's 2006 Petition for Post-Conviction Relief

On February 16, 2006, Foster filed another petition for post-conviction relief. He alleged he had discovered new evidence supporting his claim of ineffective assistance of trial counsel, as well as the effectiveness of his post-conviction counsel. He also alleged that his trial and appellate counsel were ineffective for failing to object to the calculation of his criminal history score under the Minnesota Sentencing Guidelines.

On March 10, 2006, the trial court denied his petition, finding that his claims were raised, or should have been raised, in his first post-conviction relief petition. It also concluded that his claim of ineffective assistance of appellate counsel was predicated on his trial counsel complaints, thereby barring relief. Once again, the Minnesota Court of Appeals affirmed the trial court, *Foster v. State*, No. A06-890, 2007 WL 1598992 (Minn. Ct. App. June 5, 2007), and the Minnesota Supreme Court denied review.

### D. Foster's Habeas Petition

Foster filed his federal habeas petition on October 22, 2007, and filed an amended petition on June 26, 2008. He alleged fifteen points of error. On March 31, 2009, the District Court adopted this Court's Report and Recommendation and dismissed grounds 1, 3, 4, 5, 6, 7, 8, 11, 12, 13, 14, and 15. Following this Court's recommendation, the District Court also ordered Fabian to brief the merits of grounds 2, 9, and 10. Fabian timely filed her supplemental memorandum.

## II. STANDARD OF REVIEW

A federal court's review of the state court decisions underlying a state prisoner's petition for writ of habeas corpus is "limited and deferential." *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (citation omitted). There are three circumstances in which a federal court may grant a state prisoner's habeas petition: (1) if the state court adjudication was contrary to clearly established federal law, (2) if the state court adjudication involved an unreasonable application of clearly established federal law, or (3) if the state court adjudication was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

Under the first circumstance, a state court decision is contrary to clearly established federal law if it contains a legal conclusion opposite to that reached by the United States Supreme Court or if it construes facts "materially indistinguishable" from those found in Supreme Court precedent to arrive at an opposite result from that precedent. *Davis v. Norris*, 423 F.3d 868, 874 (8th Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The second circumstance is triggered when the state court correctly identifies the governing Supreme Court precedent, but unreasonably applies it. *Id.* To warrant habeas relief, the state court's misapplication of the federal law must have been "objectively unreasonable." *Collier*, 485 F.3d

at 421 (citations omitted). The final circumstance is controlled by § 2254's mandate that, "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

Foster asserts in ground 2 of the habeas petition that his trial lawyer was constitutionally ineffective. Specifically, he claims he told his lawyer about four alibi witnesses three weeks before trial, but that his lawyer failed to investigate those witnesses or timely disclose them to the prosecution. Foster believes the alibi witnesses would have testified that he was with them during the time period involving the bottle shop and pawnshop burglaries, the arson of the federal vehicle, and the theft of the Chevy Blazer.

A habeas petitioner challenging a conviction based on ineffective assistance of counsel must generally show: (1) "that counsel's representation fell below an objective standard of reasonableness;" and (2) a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984); *see also Ringo v. Roper*, 472 F.3d 1001, 1003 (8th Cir. 2007). This analysis is "highly deferential" to counsel's performance. *Strickland*, 466 U.S. at 689. Courts employ a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 687.

According to the trial transcript, the first documented time that Deal mentioned alibi witnesses to the prosecution or the court was just after the jury had been impaneled and sworn. Deal told the court out of the presence of the jury that "four witnesses have come to my attention I would like to be able to call as part of my case-in-chief." (Trial Tr., vol. II, at 44, May 25, 1999.) Deal said he had the partial names and phone numbers of the individuals but no physical addresses. Deal also said he was not able to contact the witnesses the night before, but that Foster had spoken with them. Deal asked for a brief continuance so that he could find and interview the witnesses. Deal acknowledged to the court that Foster had mentioned the possible witnesses two or three weeks ago but did not provide their full names and phone numbers until the morning of trial. The court denied Deal's motion for a continuance and prohibited the alibi witnesses from testifying based on Rule 9.02, which requires a defendant to notify the prosecution of alibi witnesses prior to the omnibus hearing. The court commented that Foster surely would have known the names of the people with whom he claimed to be at the time of the offenses long before the omnibus hearing.

Although Foster claims that he gave Deal the names and contact information of the witnesses three weeks before trial, this Court must presume the correctness of the trial court's decision in the post-conviction proceeding to credit Deal's account of timing and events over Foster's, as Foster has not rebutted the presumption of correctness with clear and convincing evidence. Foster did submit a memorandum from his post-conviction counsel, Assistant State Public Defender Lawrence Pry, dated July 11, 2000, in which Pry summarizes a conversation he had with Deal. (Pet'r's Mem. Supp. Am. Pet. App. 1.) The memorandum is generally consistent with the trial transcript, although Pry wrote that Deal indicated it was possible that Foster could have given him phone numbers prior to the morning of trial. Even assuming Pry's notes of the

conversation are accurate, however, this equivocal statement is not clear and convincing evidence that Deal could have contacted and interviewed the witnesses three weeks before trial, much less before the omnibus hearing.

Therefore, based on the findings of the post-conviction court, this Court similarly finds that Foster did not give Deal the alibi witnesses' names, addresses, phone numbers, or sufficient contact information until the morning of trial. Once Foster gave Deal this information, Deal attempted to reach the witnesses. He also immediately advised the court of this development, explained the possible significance of the witnesses' testimony, and asked for either a continuance or leave to introduce the testimony later in the trial. Although the request was denied, Deal pursued the witnesses' testimony and renewed his request during his case-in-chief. The Court concludes that Deal's conduct was objectively reasonable. Before trial, Deal simply did not have sufficient information from Foster to pursue an alibi defense. Once Foster gave him more information, Deal argued zealously for permission to raise the defense.

Foster also fails to satisfy the second *Strickland* prong. He has not shown that but for the alleged error, the outcome of the trial would have been different. When Deal first named Baumchen, Sleen, Sislo, and Thompson as alibi witnesses, he did not know whether any of these individuals would have been willing to testify or what the substance of their testimony might have been. Once he had an opportunity to contact the witnesses, he sought to introduce the testimony of only Sleen and Baumchen. In statements they gave to the police during trial, Sleen and Baumchen said that Foster was present at Sleen's house during the time period from 2:00-4:00 a.m. on September 25, 1998, and that Foster left with John Douglas and Clayton Celley at about 4:00 a.m. (Pet'r's Pro Se Suppl. Br. to Minn. Ct. Appeals Apps. E, F.) But Sleen and Baumchen also admitted they had been drinking heavily that night, and Sleen passed out around

1:00 a.m. A jury could have chosen not to believe Sleen's and Baumchen's recollection of events, given their intoxication.

When Sislo was contacted by an investigator for Foster's post-conviction counsel, he refused to give a statement. (Pet'r's Mem. Supp. Am. Pet. App. 11.) There is no indication in the record whether Sislo would have been willing to testify as an alibi witness at Foster's trial or what the substance of his testimony would have been. Thus, the Court cannot conclude that Sislo's testimony would have changed the outcome of the trial.

Thompson testified at the post-conviction evidentiary hearing on April 3, 2003. She stated that she had been intoxicated on the night in question and had gone with Douglas and Celley when they left Sleen's house at about 1:30 a.m. Thompson said that Foster had not been in the van at that time, but that two or three other people, whom she did not know, had been. According to Thompson, after Douglas and Celley jumped out of the van and smashed the windows of the bottle shop, she fled to a nearby apartment building. Thompson testified that she knew she could not be charged with burglary because the statute of limitations had expired. She did not indicate whether she would have testified at Foster's trial. In all likelihood, Thompson would not have testified as an alibi witness for Foster because she would have implicated herself in the burglary while the statute of limitations was running. But even if she had testified, a jury could have disbelieved her testimony based on her intoxicated state, or could have found that one of the unidentified men in the van was Foster.

Further, there was sufficient evidence of Foster's participation in the offenses to support a jury finding that the alibi witnesses were not credible. Foster was present at a party with Celley and Douglas immediately prior to the crime spree, and he owned the van that was driven to the bottle shop. A witness to the burglary of the bottle shop testified she had seen three men in their

late teens with shaved heads—not two men, and not a woman—get back into the van after the burglary. Foster, Celley, and Douglas all had shaved heads at that time. When the police later found the van, it had been parked two blocks away from Foster's home, and it contained the brand of beer that had been stolen from the bottle shop. After the police pulled over the stolen Blazer following the high-speed chase, they identified Foster as the driver and verified that his appearance matched the description given by the witness of the bottle shop burglary. Police also linked the Blazer to the burglary of the pawnshop because personal items and debris from the Blazer had been left at the scene. As for the armed robbery at the convenience store, the physical description of the robber given by eyewitnesses and shown on the store's surveillance camera matched the clothes and appearance of Foster when he was later apprehended, and a wallet belonging to one of the robbery victims was found on the floor of the Blazer. Other evidence linked the Blazer to the scene of the arson and to the driving-related assaults. During the execution of a search warrant the next day, the police found three guns that had been stolen from the pawnshop in a cabinet drawer. The cabinet also contained identification documents belonging to Douglas, as well as Foster's wallet and checkbook. A fourth gun was later delivered by a friend of Foster, on his behalf, to an individual in Duluth.

Given the other evidence supporting the convictions, in addition to the intoxication of the witnesses who might have actually testified at Foster's trial, there was not a reasonable probability that the result of the trial would have been different.

### B. Sentencing Issues

In ground nine of the petition, Foster claims that his consecutive sentences for aggravated robbery and second-degree assault violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), because a judge, not a jury, determined the crimes

were committed "against a person," which was the factual basis for imposing consecutive sentences. Relatedly, Foster argues in ground ten that the State failed to charge the consecutive sentences in the complaint and failed to prove beyond a reasonable doubt all of the facts used to impose the consecutive sentences. Foster relies on *Jones v. United States*, 526 U.S. 227 (1999), for the latter argument.

Historically, juries have determined whether the prosecution has established each element of a crime beyond a reasonable doubt. *Oregon v. Ice*, 129 S. Ct. 711, 714 (2009). But when a defendant is tried and convicted of several crimes, *Apprendi* and *Blakely* do not require the jury to determine the facts required to impose consecutive sentences. *Id.* at 714-15. In a permissive consecutive sentencing scheme such as Minnesota's,[2] a judge may make the factual findings underlying the imposition of consecutive sentences. *Id.* at 715-16. Accordingly, the trial court did not err in imposing consecutive sentences after determining that Foster committed aggravated robbery and second-degree assault against people.

In *Jones v. United States*, 526 U.S. 227 (1999), the Supreme Court interpreted the federal carjacking statute as delineating three distinct offenses, each of which prescribed a different penalty, rather than a single offense with a choice of penalties. *Id.* at 229. The distinction was meaningful because elements of an offense must be charged by indictment and proven to a jury beyond a reasonable doubt, whereas sentencing considerations may be determined by a judge. *Id.* at 232. *Jones* has no applicability to this case because the trial court did not impose consecutive sentences based on elements of the substantive offenses, but under the Minnesota Sentencing Guidelines' permissive consecutive sentencing scheme. Thus, the prosecution was

---

[2] Under the Minnesota Sentencing Guidelines, "consecutive sentences are permissive" on "[m]ultiple current felony convictions for crimes against persons." Minn. Sent. Guidelines II.F.2. (1998).

not required to charge or to prove beyond a reasonable doubt the factors used to impose the consecutive sentences.

## IV. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Grounds 2, 9, and 10 of Foster's Amended Petition for Writ of Habeas Corpus (Docket No. 25) be **DENIED**;

2. Foster's Motion for Accelerated Review and Summary Judgment (Docket No. 28) be **DENIED AS MOOT;** and

3. This case be **DISMISSED WITH PREJUDICE**.


Dated this 6th day of July, 2009.   s/ *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **July 20, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of any hearing unless the parties

stipulate that the district judge is not required to review a transcript or if the district judge directs otherwise.