# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| ROGER JOSEPH FOSTER, | Civil No. 07-4317 (JRT/JJG) |
| Petitioner, | |
| v. | **ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| JOAN FABIAN, | |
| Respondent. | |

Roger Joseph Foster, #169477, 970 Pickett Street North, Bayport, MN, 55002-1490, petitioner *pro se*.

Gary W. Bjorkland, Assistant County Attorney, **ST. LOUIS COUNTY ATTORNEY**, 100 North Fifth Avenue West, Suite 501, Duluth, MN 55802-1298, for respondent.

On October 22, 2007, Petitioner Roger Joseph Foster, currently incarcerated at the Minnesota Correctional Facility in Stillwater, Minnesota, filed this petition for habeas corpus under 28 U.S.C. § 2254. Respondent Joan Fabian, the Commissioner of Corrections for the State of Minnesota, moved to dismiss Foster's habeas petition, and Foster moved for summary judgment. On March 31, 2009, the Court adopted an initial Report and Recommendation from United States Magistrate Judge Jeanne J. Graham, dismissing twelve of Foster's fifteen claims for relief, and directed Fabian to respond to Foster's remaining claims. In a second Report and Recommendation filed on July 6, 2009, the Magistrate Judge recommended that the Court deny Foster's habeas petition and dismiss Foster's remaining claims with prejudice. Foster filed objections to that

Report and Recommendation, which the Court reviews *de novo*.   28 U.S.C.
§ 636(b)(1)(C); D. Minn. LR 72.2.  For the reasons stated below, the Court overrules
Foster's objections, adopts the Report and Recommendation, and denies Foster's habeas
petition with prejudice.

## BACKGROUND

### I.      UNDERLYING CRIMINAL OFFENSES AND TRIAL

In 1999, a St. Louis County, Minnesota, jury found Foster guilty of a series of
crimes that occurred in the early morning hours of September 25, 1998.  The crimes
began with the burglary of the Eveleth Bottle Shop, a liquor store, and ended when police
apprehended Foster and two others after a high-speed chase across the Iron Range.  The
other crimes included theft of a Chevrolet Blazer, setting afire a federal vehicle, theft of
six handguns from a Virginia, Minnesota, pawn and gun shop, robbery at gunpoint of a
convenience store clerk and a bread deliveryman, and a near collision with a woman
driving to work.[1]  The jury found Foster guilty of first and third degree burglary, theft of
a motor vehicle, second degree arson, two counts of first degree aggravated robbery, four
counts of second degree assault, and possession of a firearm by a felon.  On July 19,
1999, the trial court sentenced Foster to 249 months in prison.

After the jury in Foster's case was sworn, but before opening statements, Foster's
attorney informed the trial court that he wished to call four alibi witnesses whose names
had not previously been disclosed to the prosecution.  The prosecution objected and the

---

[1] The Minnesota Court of Appeals provides a full recitation of the underlying facts in
*Foster v. State*, No. A03-991, 2004 WL 1244151, *1-*3 (Minn. Ct. App. June 8, 2004).

trial court denied the request to introduce alibi testimony.  In petitions for post-conviction relief and in his direct appeal of the conviction, Foster asserted that the witnesses' testimony would have provided him an alibi defense for charges relating to the burglary of the liquor store, the theft of the Blazer, setting the federal vehicle on fire, and the burglary of the pawn and gun shop.

## II.    STATE COURT POST-CONVICTION PROCEEDINGS

Foster appealed his convictions to the Minnesota Court of Appeals, which remanded the direct appeal pending the outcome of Foster's first petition to the trial court for post-conviction relief.  In that petition, Foster alleged that his trial counsel, Todd Deal, was constitutionally ineffective due to his failure to investigate the potential alibi witnesses prior to trial or to disclose the alibi defense to the prosecution, despite Foster's contention that he mentioned those witnesses to Deal and the public-defender investigator three weeks before his trial commenced.  Foster also alleged that his sentence was improper because his conviction for the pawn and gun shop burglary was not a crime against a person for the purposes of permissive consecutive sentencing under Minnesota's Sentencing Guidelines.  On May 27, 2003, the state trial court rejected Foster's ineffective assistance of counsel claim, but reduced Foster's sentence to 201 months after finding that the pawn and gun shop burglary was not a crime against a person.

Foster subsequently took his direct appeal and appeal of the trial court's denial of post-conviction relief to the Minnesota Court of Appeals.  Foster argued that there was

insufficient evidence to permit a jury to return guilty verdicts against him, and that Deal's representation was constitutionally ineffective. Further, Foster filed a *pro se* supplemental brief raising additional points of error. On June 8, 2004, the Minnesota Court of Appeals affirmed in all respects. *Foster v. State* (*Foster I*), No. A03-991, 2004 WL 1244151 (Minn. Ct. App. June 8, 2004). On August 25, 2004, the Minnesota Supreme Court denied Foster's petition for review. Counsel represented Foster throughout these proceedings.

On March 10, 2005, Foster, no longer represented by counsel, filed a motion with the state trial court to correct his sentence, alleging that the trial judge's imposition of consecutive sentences for one count of aggravated robbery and each of two counts of second degree assault violated *Blakely v. Washington*, 542 U.S. 296 (2004), which was decided after Foster had been sentenced. The trial court denied Foster's motion; the Minnesota Court of Appeals affirmed; and on August 23, 2006, the Minnesota Supreme Court denied Foster's petition for further review.

On February 16, 2006, Foster filed another petition for post-conviction relief with the state trial court, bringing forth new evidence in support of his claim of ineffective assistance of trial counsel, and bringing ineffective assistance claims relating to his post-conviction counsel's conduct. Foster alleged that his trial and appellate counsel were ineffective for failing to object to the calculation of his criminal history score under the Minnesota Sentencing Guidelines. The trial court denied relief, finding that the claims were or should have been raised in the first petition for post-conviction relief. The Minnesota Court of Appeals affirmed, *Foster v. State* (*Foster II*), No. A06-890, 2007 WL

1598992 (Minn. Ct. App. June 5, 2007), and the Minnesota Supreme Court denied Foster's petition for review.

Foster then filed this federal habeas petition, alleging fifteen points of error in connection with his criminal convictions. Fabian moved to dismiss all fifteen claims, and the Court adopted the Magistrate Judge's initial Report and Recommendation, granting the motion as to twelve of the fifteen claims. The Court denied the motion as to Foster's claims of ineffective assistance of trial counsel (ground two) and Foster's allegation that the trial court's imposition of consecutive sentences violated the Supreme Court's holding in *Blakely* (grounds nine and ten). The Court directed Fabian to respond to the remaining grounds for relief and, after receiving Fabian's response, the Magistrate Judge issued a second Report and Recommendation recommending that the Court deny Foster's remaining grounds for relief.

## DISCUSSION

### I.    STANDARD OF REVIEW

A state prisoner may petition a federal court for habeas corpus relief if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a federal court may not grant habeas corpus relief on an issue adjudicated on the merits by a state court unless the proceeding (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court decision is contrary to clearly established federal law under § 2254(d)(1) if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" and opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court unreasonably applies clearly established federal law if "the state court identifies the correct governing legal rule from th[e] [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. To warrant habeas relief under § 2254(d)(1), the state court's misapplication of the federal law must have been "objectively unreasonable." *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007).

When considering relief under § 2254(d)(2), the Court "presume[s] that the state court's findings of fact are correct, and the prisoner has 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Barnett v. Roper*, 541 F.3d 804, 811 (8th Cir. 2008) (quoting 28 U.S.C. § 2254(e)(1)). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## II.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (Ground 2)

Foster argues, as he did in multiple state courts, that he notified his trial attorney, Todd Deal, of the existence of four alibi witnesses – Robert "Rupe" Baumchen, Carissa Sleen, Sonny Thompson, and Justin Sislo – three weeks before trial. Foster contends that Deal failed to investigate those witnesses and did not give timely notice to the prosecution that Foster would introduce the alibi witnesses at trial. Those failures, according to Foster, prejudiced him because he was not permitted to present his alibi defense relating to the charges for the burglaries of the liquor store and pawn shop, the theft of the Chevrolet Blazer, and setting the federal vehicle on fire.

### A.    The *Strickland v. Washington* Standard for Ineffective Assistance of Counsel

To support a valid claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first prong of *Strickland*, a defendant must show that counsel's performance "fell below an objective standard of reasonableness in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under like circumstances." *United States v. Acty*, 77 F.3d 1054, 1059 (8th Cir. 1996) (internal quotations omitted). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To satisfy the second prong of *Strickland*, "[t]he defendant must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### B.    Foster's Request for an Evidentiary Hearing

As an initial matter, Foster argues that he was not afforded a state or federal hearing on his ineffective assistance of counsel claim, and consequently, that that the state court proceedings are not entitled to a presumption of correctness.  (Objections, Docket No. 44, at 2.)  As the Ninth Circuit noted, "[i]f . . . a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004); *Miller v. Champion*, 161 F.3d 1249, 1254 (10th Cir. 1998) (declining to apply the presumption where a state court failed to hold an evidentiary hearing).

During a hearing on the first petition for post-conviction relief, Foster's post-conviction attorney, Lawrence Pry, called two individuals to testify: Sonny Thompson, one of the alibi witnesses, and John Douglas, one of Foster's co-defendants.  (*See generally* Post-Conviction Hrg. Tr.)  After reviewing that testimony and the record, the district court found that Foster had not provided Deal with the names of the alibi witnesses and their phone numbers until the morning of the trial, and concluded that Deal's representation was objectively reasonable.  *See Foster I*, 2004 WL 1244151, at *7. The Minnesota Court of Appeals affirmed, deferring to the trial court's determination on

credibility and holding that the trial court did not abuse its discretion in declining to vacate Foster's conviction on the ineffective assistance of counsel claim.

After an intermediate petition for post-conviction relief addressing the propriety of his sentence, Foster again petitioned the trial court for post-conviction relief, claiming that he had obtained new evidence supporting his ineffective assistance of counsel claims. The district court denied the petition without a hearing pursuant to Minn. Stat. § 590.04, subd. 3 ("The court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner and may summarily deny a petition when the issues raised in it have previously been decided by the Court of Appeals or the Supreme Court in the same case."). *See Foster I*, 2004 WL 1244151, at *1. The Minnesota Court of Appeals affirmed, holding that the "newly discovered evidence" did "not provide a basis for the relief Foster seeks." *Id.* at *2. Foster concedes that "[a]ll facts submitted [in support of the habeas petition] . . . were submitted to the district court" in the latter petition for post-conviction relief. (Objections, Docket No. 44, at 7.)

Under AEDPA, the Court's discretion to hold an evidentiary hearing in a federal habeas proceeding is limited:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on . . .
>
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

*Id.*

"Only if the habeas petitioner 'was unable to develop his claim in state court despite diligent effort' is an evidentiary hearing not barred by § 2254(e)(2)." *Williams v. Norris*, Nos. 07-1984, 07-2115, __ F.3d __, 2009 WL 2487088, at *7 (8th Cir. Aug. 17, 2009) (quoting *Williams*, 529 U.S. at 437). Even in those circumstances, the Court's authority to grant an evidentiary hearing is discretionary. *Landrigan*, 550 U.S. at 468. Here, the state court held an evidentiary hearing on Foster's first petition for post-conviction relief and the same court reviewed the "newly discovered evidence" that Foster submitted in his third petition for post-conviction relief. Foster has had ample opportunity to develop the factual basis for his claim, and an evidentiary hearing is unnecessary to further develop the record. Nor is there any other indication that the state court's determination of the facts was at all unreasonable. Hence, the Court turns to the substance of the state court's decision.

### C.    The State Trial Court's Conclusions

#### 1.    Objective Reasonableness of Deal's Representation

The trial transcript indicates that the first documented time Deal mentioned the four alibi witnesses to the prosecution or to the trial court was just after the jury had been impaneled and sworn. Prior to opening statements but outside the presence of the jury, Deal indicated to the trial judge that "four witnesses have come to my attention I would

like to be able to call as part of my case-in-chief." (Trial Tr., vol. II, at 44, May 25, 1999.) At the time, Deal noted that he did not have addresses for the alibi witnesses, but did have their telephone numbers. (*Id.*) Deal reported that he was unable to contact those individuals, but Foster stated that he had spoken with them. (*Id.*) Deal conceded that Foster mentioned the alibi witnesses two to three weeks earlier, but he represented to the Court that it was only on the morning of the trial that he learned of the full names and phone numbers of the witnesses. As a consequence, Deal requested that the Court grant him a continuance to speak with the witnesses. The prosecution objected, and the Court denied Foster's motion for a continuance and prohibited the alibi witnesses from testifying at trial. Deal renewed his request to call two alibi witnesses later at trial, but the trial court also denied that request.

In petitioning for post-conviction relief, Foster's post-conviction counsel, Lawrence Pry, submitted a memorandum memorializing a conversation Pry had with Deal after trial. The memorandum generally mirrors the record as reflected in the trial transcript, but suggests that Deal may have received phone numbers of the alibi witnesses before trial. The trial judge denied Foster's petition, however, crediting Deal's account of the events leading up to trial over Foster's account.

The Pry memorandum states that Foster "may have provided telephone numbers" to Deal prior to trial, but that fact alone is not clear and convincing evidence that Deal could have successfully contacted the witnesses before the omnibus pretrial hearing. Nothing in the record or in Foster's submissions to this or any other court suggests that the state court's conclusions were premised on an unreasonable determination of the

facts. In light of the presumption of correctness of those state court proceedings, the Court agrees with the Magistrate Judge that the facts do not support a finding that Deal's representation was objectively unreasonable under *Strickland*. Indeed, it appears that Deal, on learning of the availability of the alibi witnesses and obtaining information necessary to contact those individuals, made concerted efforts to seek a continuance from the trial court and later to seek leave to introduce the testimony at trial. Under those circumstances, Deal's representation did not fall below standard articulated in *Strickland*.

### 2. Prejudice

Foster has failed to demonstrate a reasonable probability that, but for Deal's alleged errors, the outcome of the trial would have been different.

After finally contacting the potential alibi witnesses, Deal sought to introduce at trial the testimony of only Sleen and Baumchen. Sleen and Baumchen gave statements to police that in the early morning of September 25, 2008, Foster, Baumchen, Clayton Celley, John Douglas,[2] Justin Sislow, Sleen, and Sonny Thompson spent time at Sleen's home. (Pet'r Pro Se Suppl. Br. to Minn. Ct. App., Docket No. 32, apps. E, F.) Both Sleen and Baumchen stated that Celley and Douglas left the house at about 2:00 a.m., but did not indicate whether Foster went with them; rather, both parties merely indicated that Douglas and Celley left the residence. (*Id.*) The pair later returned, and Sleen and

---

[2] Douglas, a co-defendant, testified at the post-conviction hearing and claimed that he, Celley, and one other individual were together at the time of the two burglaries, the car theft, and the motor vehicle fire. Douglas refused to identify the third individual, however, only asserting that it was not Foster. (Post-Conviction Hr'g Tr. at 33.) Douglas was eventually held in contempt of court for failing to identify the third individual, and was sentenced to an additional six months in prison for that contempt. (*Id.* at 45-46.)

Baumchen stated that "Celley, Foster, and Douglas" then departed the house as a group. The period after Celley and Douglas left – apparently by themselves – and up until they returned for Foster, is the approximate time-frame for the offenses involving the burglary of the liquor store, the theft of the Chevy Blazer, the motor vehicle fire, and the burglary of the pawn and gun shop. Sleen and Baumchen both admitted that they were heavily intoxicated at the time of the events.

There is no indication that either Sislo or Thompson would have offered alibi testimony supporting Foster's defense. Sislo categorically refused to give a statement to Pry for use at the post-conviction hearing. Thompson, on the other hand, testified at the post-conviction hearing and indicated that she, Celley, Douglas, and two or three other people whom she did not know had been in the van at the time of the burglary of the liquor store. Thompson could not identify the other people but testified that Foster was not one of them.

The Magistrate Judge carefully recounted the extensive evidence demonstrating Foster's participation in the offenses and calling into question the alibi witnesses' credibility. Foster does not challenge that evidence, and the Court does not repeat it here.[3] Under these circumstances, Foster has not demonstrated a reasonable probability that, but for Deal's alleged ineffective assistance, the outcome of the trial would have been different. First, Sleen, Baumchen, and Thompson admitted that they were heavily intoxicated the night of Foster's offenses. Although the Court notes that a jury could

---

[3] A full recitation of the contrary evidence can be found in the Magistrate Judge's Report and Recommendation (*See* Report and Recommendation, Docket No. 42, at 8-9.)

have just as easily believed their testimony as it could have discredited the same testimony on the basis of their intoxication, that possibility by itself does not satisfy Foster's burden under the second prong of *Strickland*. Further, given Sislo's refusal to give Pry a statement, there is no indication that Sislo would have been willing to testify at trial or that his testimony would have been favorable. Thompson's testimony is also suspect because she was unable to offer meaningful, credible testimony regarding the identities of all parties involved in the first crimes of the morning.

Given the extensive evidence calling into question these witnesses' accounts of the events, the Court is not persuaded that Foster has demonstrated a reasonable probability that, but for Deal's alleged errors, he would not have been found guilty of the first four crimes of the crime spree. The state court's decision was not premised on an unreasonable determination of facts, was not contrary to federal law, and was not the result of a misapplication of federal law. Accordingly, the Court denies Foster's habeas petition as to the claim of ineffective assistance of trial counsel.

## III.    SENTENCING (Grounds Nine and Ten)

In ground nine of his habeas petition, Foster claims that his consecutive sentences for one count of aggravated robbery and two counts of second-degree assault violated the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), because a judge (as opposed to a jury) determined that those offenses constituted crimes "against a person." In ground ten, Foster asserts

that the State "failed to charge permissive consecutive sentences" in Foster's complaint and prove beyond a reasonable doubt the facts supporting consecutive sentences.

## A.    Ground Nine

The Magistrate Judge concluded that the trial court did not err in imposing consecutive sentences on Foster, and further determined that the prosecution was not required to prove beyond a reasonable doubt the facts used to impose consecutive sentences. (Report and Recommendation, Docket No. 42, at 11-12.) Foster does not directly object to the Magistrate Judge's conclusions, but rather states that he rests on the argument in his petition and has not "received" the case on which the Magistrate Judge's conclusion rests.

The Supreme Court's holding in *Oregon v. Ice*, 129 S. Ct. 711, 714 (2009), unequivocally supports the Magistrate Judge's conclusion. Foster correctly asserts that *Apprendi* and *Blakely* "hold that it is within the jury's province to determine any fact (other than the existence of a prior conviction) that increases the maximum punishment authorized for a particular offense." *Id.* at 714. The jury, however, traditionally has had no role in deciding whether consecutive or concurrent sentences are appropriate where the defendant "has been tried and convicted of multiple offenses, each involving discrete sentencing prescriptions." *Id.* In *Ice*, the Supreme Court held that states may implement sentencing schemes that allow judges to make the factual findings necessary to impose consecutive sentences. *Id* at 714-15.

Under Minnesota's sentencing scheme, "consecutive sentences are permissive" when a defendant accrues "multiple current felony convictions for crimes against persons." Minn. Sent. Guidelines II.F.2 (1998). In light of *Ice* and Minnesota's permissive consecutive sentencing scheme, the trial judge did not err in imposing consecutive sentences on Foster after finding that the aggravated robbery and two second degree assault offenses constituted crimes against persons. *See Ice*, 129 S. Ct. at 715-16; *see also Cf. Lewis v. State*, 697 N.W.2d 624, 626-27 (Minn. Ct. App. 2005) (discussing what constitutes a crime against a person under Minnesota law). Accordingly, the Court denies ground nine of Foster's habeas petition.

**B.      Ground Ten**

As to ground ten, Foster cites *Jones v. United States*, 526 U.S. 227 (1999), in support of his argument that the prosecution erred by failing to charge in the criminal complaint factors used to impose permissive consecutive sentences. In particular, Foster contends that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *See id.* at 243 n.6.

In *Jones*, the Supreme Court addressed a federal carjacking statute, 18 U.S.C. § 2119, that provided three different sets of punishments for offenses with different factual predicates. The Supreme Court concluded that the statute created three offenses, each corresponding to a distinct penalty, rather than one offense with a choice of penalties. *Jones*, 526 U.S. at 252. That distinction was important because "[m]uch turns

on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." *Id.* at 232. That is, the Supreme Court made clear that although the prosecution must charge each element of an offense in the indictment, and thereafter prove each element beyond a reasonable doubt, the prosecution is not similarly required to charge elements that factor in sentencing considerations. *See id.*

Here, the Court agrees with the Magistrate Judge that *Jones* is inapplicable. The trial court imposed consecutive sentences under Minnesota's permissive consecutive sentencing scheme based on sentencing factors rather than factual findings relating to elements of the criminal offense. Because those sentencing factors are within the discretion of the sentencing judge, the prosecution is not required to charge facts relating to those factors in the criminal complaint, to submit them to a jury, or to prove them beyond a reasonable doubt. Accordingly, the Court denies ground ten of Foster's habeas petition.

In sum, Foster has not established that he is entitled to habeas relief on the grounds asserted in his petition. As the remaining grounds for his requested relief are denied, the Court dismisses Foster's petition for habeas relief with prejudice.

## IV.  CERTIFICATE OF APPEALABILITY

The Court may grant a Certificate of Appealability only where the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C.

§ 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the issues must deserve further proceedings. *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994). For purposes of appeal under 28 U.S.C. § 2253, the Court finds it unlikely that reasonable jurists would find the issues raised in Foster's § 2254 petition debatable, or that some other court would decide this petition differently. The Court therefore declines to grant a Certificate of Appealability in this case.

## ORDER

Based on the foregoing records, files, and proceedings herein, the Court **OVERRULES** petitioner Roger Joseph Foster's objections [Docket No. 44] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated July 6, 2009, [Docket No. 42]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Foster's Petition for Writ of Habeas Corpus [Docket No. 1] and First Amended Petition for Writ of Habeas Corpus [Docket No. 25] are **DENIED** as to the remaining Grounds 2, 9, and 10.

2. Foster's Motion for Accelerated Review and Summary Judgment [Docket No. 28] is **DENIED as moot**.

**IT IS FURTHER HEREBY ORDERED** that:

3. Respondent Joan Fabian's Motion to Dismiss [Docket No. 18] is **GRANTED.**

4.      This case is **DISMISSED with prejudice.**

5.      For the purpose of appeal, the Court does not grant a Certificate of
Appealability under 28 U.S.C. § 2253(c)(2).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  September 29, 2009            _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                United States District Judge